IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| IRIS SPEDALE and DANIEL SPEDALE, husband and wife, | |
| Plaintiffs, | Case No. 2:17-cv-00109-PHX-JJT |
| v. | |
| CONSTELLATION PHARMACEUTICALS, INC. | |
| Defendant. | |

**PROPOSED CASE MANAGEMENT PLAN**

Plaintiffs, Iris Spedale and Daniel Spedale ("Plaintiffs"), and Defendant, Constellation Pharmaceuticals, Inc. ("Defendant") (collectively, the "Parties"), by their respective counsel and in accordance with Federal Rule of Civil Procedure 26(f), submit the following proposed case management plan.

1. **Nature of the case:**

    **a. Plaintiffs' Claims**

    Mrs. Spedale suffered permanent injuries as a result of ingesting an experimental cancer drug manufactured and distributed by defendant in connection with a clinical trial titled: A Phase 1 Study of CPI-0610, a Small Molecule Inhibitor of BET Proteins, in Patients with Previously Treated Multiple Myeloma (the "Study"), which was sponsored by defendant. Defendant designed the Study whereby patients with previously treated multiple myeloma would be studied to assess the activity of an investigational new drug called CPI-0610. Mrs. Spedale, who suffered a recurrence of multiple myeloma, was advised through the materials provided by defendant and its agents that the Study drug was her best chance of treating her cancer and it was in her best

therapeutic interest to participate in the Study. Mrs. Spedale trusted the study organizers regarding their recommendation to join the Study, and relied on their representations that it was safe for her to do so, that the Study drug would treat her cancer, and was the recommended treatment of the options available to her.  Mrs. Spedale executed the Informed Consent Form, which failed to disclose significant issues and concerns regarding the safety, risks, and benefits of the Study drug. Had Mrs. Spedale been fully informed, she would not have agreed to participate in the Study.  A reasonably prudent person in Mrs. Spedale's position would not have agreed to participate in the Study if he or she were properly informed.  Shortly after commencement of the Study and ingestion of the Study drug, Mrs. Spedale's mental and cognitive state significantly deteriorated and she suffered psychiatric episodes requiring inpatient psychiatric treatment. She never experienced psychological issues prior to this time.  Defendant denies the allegations in plaintiffs' Complaint.

      **b. Defendant's Defenses**

Defendant has denied all of plaintiffs' claims and denies that it did not properly inform Mrs. Spedale of the safety, risks, and benefits of the study drug.

Defendant funded the subject study and was the sponsor who worked in conjunction with the Mayo Clinic to conduct pre-clinical testing on CPI-0610 (the "study drug") for purposes of seeking FDA approval for the investigational new drug.  Scientists and investigators from the Mayo Clinic conducted the subject study on behalf of the Defendant.  Prior to enrollment in the clinical trial and upon information and belief, Mrs. Spedale signed an informed consent form on December 1, 2015 provided by the Mayo Clinic which indicated that "[t]he main purpose of this study is to determine the highest dose of CPI-0610 that can be given without causing severe side effects. This is a Phase I study, which means that CPI-0610 is in very early stages of testing in humans. …Future studies may then test whether or not CPI-0610 is useful against different types of cancer."

Defendant denies that they recommended plaintiff join the study or advised her that it was the best treatment option for her cancer. The informed consent was very detailed about the purpose of the study and any risks that were observed in the animal studies. The informed consent further disclosed that CPI-0610 is experimental and not approved by the FDA or any other regulatory agency for the treatment of cancer. The manic and psychotic-type episodes allegedly suffered by Mrs. Spedale was not observed in defendant's pre-clinical animal studies prior to the Phase I trial. Defendant warned of any side effects and/or risks they were aware of at the time of the Phase I trial which were all clearly listed on the informed consent signed by Mrs. Spedale. Therefore, defendant did not have any knowledge or information about manic and/or psychotic type episodes being associated with ingestion of the study drug.

2. **Elements of Proof Necessary for each count of the Complaint and each affirmative defense:**

**Counts in Complaint:**

I. **Negligence**

   a. To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007).

II. **Lack of Informed Consent**

   a. Plaintiffs alleging lack of informed consent must show two types of causation: (1) the plaintiff would have declined the treatment with adequate disclosure; and (2) the treatment proximately caused injury to the plaintiff.

*Rice v. Brakel*, 233 Ariz. 140, 146 (Ct. App. 2013).

III. **Strict Product Lability**

   a. To establish a prima facie case for strict products liability, a plaintiff must show that the product was in a defective condition (when it left the defendant's hands), that the defect made the product unreasonably dangerous, and that the defect was a proximate cause of plaintiff's injuries. There are three categories of defects in strict products liability actions: manufacturing defects; design defects; and informational defects in regard to instructions and warnings. *Piper v. Bear Medical Systems, Inc.,* 180 Ariz. 170, 173–74 (Ariz.Ct.App.1993). The Supreme Court of Arizona has made clear that "[s]trict liability in tort is found only where the defective condition causes the product to be unreasonably dangerous." *Id.* (quotations omitted).

IV. **Loss of Consortium**

   a. A claim for loss of consortium is derivative of the underlying tort thus "all elements of the underlying cause must be proven before the claim can exist." *D'Agnese v. Novartis Pharm. Corp.,* 952 F. Supp. 2d 880, 893 (D. Ariz. 2013). A claim for loss of consortium between a husband and a wife consists of the loss of "the society, companionship, conjugal affections and assistance of the other; the so-called sentimental elements of consortium, to which each has the right." *Breeser v. Menta Grp., Inc., Nfp*, No. 2:10-CV-01592-PHX, 2011 WL 1465523, at *8 (D. Ariz. Apr. 18, 2011).

**Affirmative Defenses:**

   I. The claims arising out of the subject matter of the transactions and

4

1112231v.1

occurrences alleged were the results of risks assumed by the plaintiff.

II. The complaint fails to state a claim upon which relief may be granted.

III. The acts or omissions alleged by the plaintiff were done with the actual or implied consent of the plaintiff.

IV. The plaintiff knew of the potential dangers inherent in the use of the product and needed no warning as to these dangers.

V. There was no structural or design defect inherent in the product at the time of its use by the plaintiff or any alternative feasible design to the product.

VI. The product was of the kind and quality which would pass without objection in the trade or industry involved.

3. **Factual and legal issues genuinely in dispute:** At this time it is believed that all legal issues are in dispute. It is unknown which, if any, facts are in dispute.

4. **Jurisdiction:** This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, in that the plaintiffs are a citizens of Arizona and the defendant is a citizen of Massachusetts, and the amount in controversy is in excess of $75,000.00.

Plaintiffs reside in and are citizens of Arizona.

Defendant is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 215 First St Suite 200, Cambridge, MA 02142.

5. **Parties not served or not answered:** None.

6. **Parties not subject to the Court's jurisdiction:** None.

7. **Dispositive or partially dispositive issues to be decided by pretrial motions:**

While this litigation is in its early stages, Defendant anticipates filing a Motion for Summary Judgment as to all of plaintiffs' claims in this matter.

8. **Magistrate Jurisdiction:**

The parties do not unanimously consent to proceed before a Magistrate Judge.

9. **Status of related cases pending:** None.

10. **Changes in timing, form, or requirement for disclosures under Rule 26(a):** None. The parties have informally exchanged some documents.

11. **Proposed deadlines:**

    a. Motions to amend/join: 6/19/17

    b. Completion of all fact discovery: 4/2/18

    c. Plaintiffs' disclosure of expert testimony: 7/6/18.

    d. Defendant's disclosure of expert testimony: 8/3/18

    e. Disclosure of rebuttal expert testimony: 8/17/18

    f. Disclosure of all witnesses, exhibits and other matters under Rule 26(a)(3): 30 days before trial date.

    g. Closure of all discovery: 9/21/18

    h. Completing good faith discussions of settlement: 10/5/18

    i. Dispositive and Daubert motion cut-off date: within 30 days of completing expert depositions.

12. **Scope of Discovery:**

Documentation regarding the Study, including the informed consent process, the drug and plaintiffs' injuries. To date, defendant has provided plaintiff with a large amount of documents related to the Study. Defendant has also obtained medical records from Dr. Rafael Fonseca, Dr. Peter Bergsagel, and inpatient records from Banner Hospital (8/4/15 to 10/11/16). Defendant has informally requested Mrs. Spedale's medical records from

two years prior to the incidence to present from Drs. Rafael Fonseca and Peter Bergsagel, Banner Hospital and any other medical providers related to medical issues stemming from her enrollment in the Study and bearing on her neurological and/or psychological condition. Defendant additionally seeks Mrs. Spedale's signed informed consent and documents, emails, letter and other written correspondence relating to her participation in the trial. Defendant would seek to depose plaintiffs and any other witness bearing on or supporting Mrs. Spedale's psychological changes and condition, as well as any treating physician. Plaintiffs will seek to depose representatives of defendant with most knowledge of the Study, the drug and the informed consent process. Plaintiff potentially would also seek to depose the Study's principal investigator and relevant IRB members.

13. **Changes in limitations on discovery:** None.

14. **Estimated length of trial:** 5 days.

15. **Jury trial:** Plaintiff has requested trial by jury.

16. **Prospects for settlement:** To date, settlement discussions have not taken place. Plaintiffs are amenable to settlement discussions at any time.

17. **Any issues requiring complex track:** Unknown at this time.

18. **Matters that will aid the Court in resolving this dispute:** Unknown at this time.

Dated: May 26, 2017

*s/ Alan C. Milstein*
**Alan C. Milstein, Esquire**
Sherman, Silverstein, Kohl,
Rose & Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Counsel for Plaintiffs*


*s/ Arthur J. Liederman (Admitted Pro Hac Vice)*
*s/ Nicole M. Battisti (Admitted Pro Hac Vice)*
**Arthur J. Liederman, Esquire**
**Nicole M. Battisti, Esquire**
Morrison Mahoney LLP
120 Broadway, Suite 1010
New York, NY 10271
Telephone: (212) 825-1212
Facsimile: (212) 825-1313

*s/ Margaret T. McCarthy*
**Margaret T. McCarthy, Esquire**
Renaud Cook Drury Mesaros, PA
One North Central, Ste 900
Phoenix, Arizona 85004
Telephone: (602) 307-9900
Facsimile: (602) 307-5853

*Counsel for Defendant*

1112231v.1