Arthur J. Liederman (Bar No.1184167)
(*Admitted Pro Hac Vice*)
aliederman@morrisonmahoney.com
Nicole M. Battisti (Bar No. 4961413)
(*Admitted Pro Hac Vice*)
nbattisti@morrisonmahoney.com
**MORRISON MAHONEY LLP**
120 Broadway, Suite 1010
New York, NY 10271
Telephone: (212) 825-1212
Facsimile: (212) 825-1313

Jeffrey S. Hunter, Esq. (Bar No. 024426)
JHunter@rcdmlaw.com
**RENAUD, COOK, DRURY, MESAROS, PA**
One North Central, Ste. 900
Phoenix, AZ 85004-4117
Tel: (602) 307-9900

*Attorneys for Defendant*
*Constellation Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

---

| | |
|---|---|
| IRIS SPEDALE and DANIEL SPEDALE, husband and wife,<br><br>      Plaintiffs,<br>  -against-<br><br>CONSTELLATION PHARMACEUTICALS, INC.,<br><br>      Defendant. | Civil No. 2:17-CV-00109-ESW<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ORAL ARGUMENT REQUESTED]** |

Defendant, Constellation Pharmaceuticals, Inc. ("Constellation" or "Defendant"), moves pursuant to the Federal Rules of Civil Procedure 56(a), for summary judgment against the plaintiffs because there is no genuine issue of fact and defendant is entitled to judgment as a matter of law. Constellation incorporates all the facts of this case from the accompanying Statement of Facts, as if fully set forth herein.

Plaintiffs have alleged that Constellation, the sponsor of the study drug, was negligent in failing to disclose/warn of certain risks of the drug, in failing to obtain plaintiffs' informed consent for enrollment in the clinical trial, and is strictly liable because the study drug was defectively designed and unreasonably dangerous. [**Plaintiffs' Complaint "Compl."** pgs 8-13.]

Plaintiffs are unable to establish any of the causes of action alleged (Lack of Informed Consent, Strict Liability and Negligence). Informed consent involves the legal duty of disclosure imposed on a physician to inform the patient of the risks and dangers of the drug. Constellation had no contact with plaintiffs. Additionally, plaintiffs are barred from bringing a claim for strict products liability against a sponsor of an investigational/experimental drug since this was not a product that was sold in the normal course of business. Moreover, there is no evidence that the study drug was defective in its design or manufacture, and plaintiffs have not shown that the allegedly inadequate warnings rendered the study drug defective or that the warning, or lack thereof, caused plaintiffs' injuries. Last, plaintiffs' cause of action for negligence fails as a matter of law because Constellation had no duty to plaintiffs.

There are no disputed facts and Constellation is entitled to summary judgment on all causes of action asserted in the complaint. This motion is supported by the following Memorandum of Points and Authorities and a separate Statement of Facts in Support of Defendant's Motion for Summary Judgment (SOF), filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  PRELIMINARY STATEMENT**

Plaintiffs have asserted three legal causes of action – lack of informed consent, strict liability and negligence. [**Compl**. pgs. 8-13]. Plaintiffs' allegations regarding purported lack of informed consent cannot serve as a factual or legal basis of liability against Constellation. There is no question of fact that Ms. Spedale signed the informed consent. [**Statement of Facts "SOF"**, ¶¶ 1, 34]. Moreover, plaintiffs are without the right to contend that the informed consent was deficient in substance or was misleading since both testified that she signed the document without reading it or knowing what was contained in the document. [**SOF** ¶ 35].

Even if there would be a basis for the plaintiffs to legally contend that Ms. Spedale's informed consent was deficient, plaintiffs have no basis for a cause of action against Constellation since Constellation had no obligations or responsibility as a matter of law regarding the informed consent. Allegations that no one reviewed the informed consent with plaintiff or explained the significant risks of the clinical trial, are of no concern or consequence to Constellation.  [**Compl. ¶ 54**].  Any dispute regarding the substance or manner of obtaining the informed consent is between the plaintiffs and Ms. Spedale's treating physicians at the Mayo Clinic, or with the clinical trial site, all of whom are not named as defendants in this litigation. The Mayo Clinic was not an agent of Constellation.  Constellation cannot be held liable for the lack of informed consent for the treatment plaintiff received at the Mayo Clinic and this cause of action against Constellation fails as a matter of law.

As a drug in clinical trials (Phase I trials) there is no basis for any an allegation that the test drug was itself defective in either manufacture or design. Nor is there any credible evidence offered by plaintiffs that the drug was defective in design or manufacture. The drug was not sold or in

distribution publicly. It was being used in a supervised clinical trial. Nor is there a question regarding any failure to warn as a matter of strict product liability.

The only issue is whether Constellation was negligent in its drafting of the informed consent and whether all necessary information and warnings were provided to Ms. Spedale's physicians. This comes down to whether the pre-clinical studies were properly conducted and the clinical trial documents were appropriately drafted for the study site – the Mayo Clinic. Specifically, whether the exclusion criteria in the clinical trial protocol should have been modified to exclude patients with prior steroid-induced psychosis, such as Ms. Spedale, and exclude patients with alternative treatment options. Plaintiffs have failed to proffer medical or scientific evidence that establishes that the study drug would trigger neurological or psychological changes or injuries or that some distinct class of plaintiffs should be excluded to avoid a known risk of harm.

Plaintiffs' case is built entirely on plaintiffs' one neurology expert, Dr. Sutton. In an accompanying motion, Constellation contends that Dr. Sutton's opinions and testimony should be excluded. Dr. Sutton has failed to identify any findings in the pre-clinical toxicology data demonstrating that Constellation failed to perform the required and appropriate pre-clinical testing, specifically neurotoxicity testing. Dr. Sutton relies exclusively on one published article[1] (co-authored by one of Constellation's former founders) in which he suggests establishes that BET inhibitors, the class of drugs in which the study drug is part of, causes brain injury in mammals. **[SOF ¶ 62].** Constellation's VP of Research and microbiologist, Dr. Robert Sims, confirmed that Sutton's conclusions are factually inaccurate and a gross misinterpretation of the findings. **[SOF ¶ 63].**

---

[1] Korb E, Herre M, Zucker-Scharff I, Darnell RB, Allis CD. "BET protein Brd4 activates transcription in neurons and BET inhibitor Jq1 blocks memory in mice. Nat Neurosci. 2015; 18(10):1464-73.

3

Constellation's dually board-certified expert in neurology and psychiatry has stated that there is no scientific or medical literature supporting the theory that CPI-0610 causes or even exacerbates psychiatric illness. [**SOF ¶ 65**]. Even broader, there is nothing in the medical literature suggesting that persons with manic-depressive antecedents undergoing treatment with BET inhibitors are at a heightened risk for a manic breakdown. *Id*.

Aside from the medical literature, data, and studies, Constellation's toxicology expert, Dr. David Jacobson-Kram, examined the preclinical toxicology data of the study drug and noted that there was no change in behavior patterns of the animals/rodents that would suggest neurological effects and nor a need for additional neurotoxicity testing. **[SOF ¶ 9].** In the Phase 1 human clinical trials for the study drug, neurobehavioral effects were not seen in other patients treated similarly or in patients receiving higher doses of the drug than Ms. Spedale. **[SOF ¶ 10].** Notably, 138 patients were studied in the Phase 1 clinical trial and Ms. Spedale was the only one with an adverse event of mania/psychosis. **[SOF ¶ 40].** The only reported events considered to be related to the study drug that fall into the category of psychiatric illness, were two events of confusion, that resolved. **[SOF ¶ 41].**

Plaintiffs' four causes of action: (I) Negligence, (II) Lack of Informed Consent, (III) Strict Products Liability, and (IV) Loss of Consortium, Interest and Punitive Damages are premised on the allegations:

- the Informed Consent failed to disclose significant safety risks of the study drug (Compl. ¶ 66),

- the Informed Consent was materially misleading and deceptive including an understatement of the risks of serious adverse events (Compl. ¶ 65),

- Constellation intentionally, recklessly and/or negligently enrolled Mrs. Spedale in the clinical trial without obtaining her informed consent (Compl. ¶ 75),

4

- that the study drug was defective in design or formulation (Compl. ¶ 84), and

- that the study drug was defective due to inadequate warnings or instructions because Constellation knew or should have known that the product was unreasonably dangerous to plaintiff (Compl. ¶ 86)

Plaintiffs have been unable to provide reliable evidence to support their allegations that the informed consent was deficient; that Constellation failed to obtain plaintiff's informed consent or had the responsibility and duty to do so; that the study drug was defective or unreasonably dangerous; and the warnings for the study drug were inadequate.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the record demonstrates that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden of production is upon the moving party to identify those portions of the pleadings, disclosure materials and discovery on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). "[T]he burden on the moving party may be discharged by 'showing' – that is pointing out to the District Court – that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party satisfies this burden, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the nonmoving party has not demonstrated that a dispute of material fact exists and summary judgment must be granted in favor of the movant. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III. THERE IS NO BASIS FACTUALLY OR AS A MATTER OF LAW TO ASSERT A CAUSE OF ACTION AGAINST DEFENDANT FOR LACK OF INFORMED CONSENT

As summarized above, plaintiffs allege that the informed consent did not inform them about negative neurological/psychological effects, that she was not informed that the purpose of this particular clinical trial was not to study the efficacy of the drug, and that Constellation failed to obtain her informed consent all together.

Dispositive of any defendant liability pertaining to "lack of an informed consent" is the plaintiffs' testimony that Ms. Spedale voluntary executed the informed consent without reading the informed consent nor having anyone at the trial site read it to her to explain the significant risks. **[SOF ¶ 35; Compl. ¶ 54].** Notwithstanding the fact that the approval of the consent form did not rest with Constellation, plaintiffs cannot allege that the substance of the informed consent was misleading and deceptive, when they did not read it and where unaware of its contents. *Id*.

Plaintiffs alleging lack of informed consent must show two types of causation (1) adequate disclosure would have caused the plaintiff to decline the treatment, and (2) the treatment proximately caused injury to the plaintiff. *Rice v. Brakel,* 310 P.3d 16 (Ariz. Ct. App. 2013) (denying plaintiff's lack of informed consent allegations and holding that the lack of informed consent could not be imputed to the physician's employer). Constellation can have no liability since obtaining the informed consent was the responsibility and obligation of the Mayo Clinic, as the trial site.

*(i) Informed consent is between the plaintiffs and medical providers*

What was written in the informed consent is irrelevant in this action given the plaintiffs concession that it was never read, nor were the contents described. **[SOF ¶ 35; Compl. ¶¶ 21, 54].** The only question pertaining to the informed consent was whether the process or manner in which it was obtained by the Mayo Clinic was appropriate or deficient.

All clinical trials are required by Federal Regulation to be approved by an Institutional Review Board ("IRB") that is independent of the Study Sponsor. [**SOF ¶ 21**; 45 CFR § 46.107]. The Mayo Clinic IRB acted as the IRB of record for patients enrolled at the Mayo Clinic for this particular study. [**SOF ¶ 22**]. The Mayo Clinic's guidelines stated that their IRB was responsible for ensuring that the informed consent accurately described the risks and benefits, approving the informed consent, and obtaining the informed consent from the subject. **[**21 CFR 56.111; **SOF ¶¶ 16, 20, 47]**. Federal regulations also place the responsibility for obtaining the informed consent with the investigator. 21 C.F.R. §50.20. Plaintiffs' expert concedes that the principal investigator (Dr. Bergsagel) and the Mayo Clinic, "were responsible for ensuring that informed consent was obtained including ensuring that the [informed consent form] accurately reflected the risk of the study and investigational agent." [**SOF ¶ 60**]. Even though Constellation did not have a physician-patient relationship with Ms. Spedale and was not responsible for explaining the informed consent and securing Ms. Spedale's informed consent, Constellation's IRB expert confirmed that the informed consent signed by plaintiff was compliant with the federal regulations. [**SOF ¶ 45].**

The Mayo Clinic was not a partner, agent or employee of Constellation and the Clinical Trial Agreement clearly stated the Mayo Clinic was an "independent contractor." [**SOF ¶ 17**]. To create an agency relationship, "there must be a manifestation of consent by the alleged principal to the alleged agent that the agent shall act on his behalf and subject to his control and consent by the agent to act on behalf of the principal and subject to his control." *Dawson v. Withycombe*, 216 Ariz. 84, 100 (App. 2007); *State v. Superior Court, In and For Pima County*, 120 Ariz. 501, 504 (App. 1978). The principal-agent relationship only exists if there is an understanding between the parties that creates a fiduciary relationship, in which one is subject to the directions of the other. Restatement Agency, Second, §1. There is no evidence that the Mayo Clinic understood and

agreed that they were acting for Constellation personally. Here, the Mayo Clinic and Constellation explicitly contracted and agreed that the Mayo Clinic was an independent contractor. [**SOF ¶ 17**].

Under the FDA's regulatory scheme, the IRB, is meant to "protect the rights and welfare" of the trial participants during a clinical trial. 21 C.F.R. § 56.101. Constellation did not have the right to control the Mayo Clinic in this respect because it was not in communication with the subjects and was not obligated under federal law to obtain the subject's informed consent.

The Mayo Clinic executed FDA Form 1572, in which the principal investigator at the Mayo Clinic (Dr. Bergsagel) agreed to personally conduct and supervise the clinical trial in accordance with the federal rules, and obtain the patient's informed consent. **[SOF ¶ 24].** Pursuant to 21 CFR § 50.20,

> "no investigator may involve a human being as a subject in research covered by these regulations unless the investigator has obtained the legally effective informed consent of the subject or the subject's legally authorized representative. An investigator shall seek such consent only under circumstances that provide the prospective subject or the representative sufficient opportunity to consider whether or not to participate and that minimize the possibility of coercion or undue influence."

Under the learned intermediary doctrine, a manufacturer satisfies its duty to warn end users by giving appropriate warnings to the specialized class of persons who may prescribe or administer the product. *Dyer v. Best Pharmacal,* 577 P.2d 1084 (Ariz. Ct. App. 1978). "[A] drug manufacturer has discharged his duty to the public if he has properly warned the administering physician of the contraindications and possible side effects of the drug." *Id*. at. 1087. Constellation supplied Ms. Spedale's treating physicians and the Mayo Clinic with all information about the study drug and clinical trial protocol, including the risks and information that enrollees should have no effective standard treatment available, nor has there been testimony or evidence to the contrary. [**SOF ¶ 67**]. The cause of action for lack of informed consent cannot stand and must be dismissed in its entirety.

8

*(ii) The substance of the unread informed consent did identify that the trial was a Phase 1 trial and that there were unknown risks.*

The informed consent identified that the clinical trial was a Phase 1 experimental study with the purpose of determining the highest dose of a non-FDA approved drug that can be given without causing severe side effects. [**SOF ¶¶ 48-50**]. The informed consent did identify the endpoints to the study such as determining the proper dose and the side effects of the drug. [**SOF ¶ 48**]. The informed consent warned that certain risks were not known which could be serious and/or fatal, and that there might be no medical benefit of taking the study drug. [**SOF ¶ 50**]. The informed consent complied with all elements required by the federal regulations under 21 CFR § 50.25 and plaintiffs or their expert have not explicitly identified how the informed consent deviated from the elements required of the federal rules.

The Mayo Clinic, including the treating physicians and the staff involved in this clinical trial, were all experienced in clinical trials, including Phase 1 trials. There is no evidence that the Mayo Clinic did not understand the purpose of a Phase 1 clinical trial, or that there were unknown risks. As a result, the cause of action for lack of informed consent fails.

## IV.   CONSTELLATION CANNOT BE HELD LIABLE FOR STRICT PRODUCTS LIABILITY

Strict products liability is defined as "one who sells any product in a defective condition unreasonably dangerous to the user or consumer…" §402A Restatement (Second) of Torts. Pursuant to Arizona's Pattern Jury Instructions, before a defendant can be liability for strict liavility, a trier of fact must find that the defendant "manufactured or sold a product." RAJI (Civil) PLI 1 (5th Ed.). Manufacturer means "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its **sale to a user or consumer**…" A.R.S. § 12-681(1). The study drug at issue was not *sold* to a user or consumer, or distributed commercially. The study drug at issue, was experimental and not

9

being sold or used by general consumers. It was very heavily regulated by a clinical trial protocol, which experienced physicians monitored.

Exhibit K of the Restatement (Second) of Torts, §402A, has recognized that some products have inherent risks and as long as the product is properly prepared and accompanied by the proper warnings, the product cannot be seen as defective and unreasonably dangerous.[2] *See Heinrich v. Sweet*, 49 F.Supp.2d 27, 41-42 (D. Mass. 1999)(comment k precludes strict liability for alleged experimentation with drug).

Even if this court determines strict liability to be applicable, plaintiffs' claim still fail because they cannot establish that the study drug was defective and unreasonably dangerous, nor can they prove causation. Under Arizona's strict products liability law, strict liability in tort is found only where the defective condition causes the product to be unreasonably dangerous. *Southwest Pet Products, Inc. v. Koch Industries, Inc.,* 273 F.Supp.2d 1041, 1053 (D. Ariz. 2003). In order to make a *prima facie* case of strict products liability a plaintiff must show (a) that when the product left the defendant's control it was in a defective condition that made it unreasonably dangerous and (b) that the defect was a proximate cause of plaintiff's injuries. *Jimenez v. Sears, Roebuck and Company,* 183 Ariz. 399, 402; 904 P.2d 861 (1995); *Gosewich v. American Honda Co.,* 152 Ariz. 400, 403 (1987); *Grafitti Valenzuela ex rel Grafitti v. City of Phoenix*, 216 Ariz. 454, 460 (2004)(emphasizing that plaintiff's burden requires he show his injuries were a

---

[2] "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. . . . Such a product, properly prepared, and accompanied by proper directions and warning, **is not defective, nor is it unreasonably dangerous**. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

substantial factor in bringing about the harm.).  A failure to provide any one of these elements is fatal to their case.

Plaintiffs' entire case has been centered on the conduct of Constellation, not the formulation or design of the BET inhibitor itself.  "The central focus of inquiry in strict liability design cases is whether the *product* was unreasonably dangerous, while the focus in negligent design cases is whether the manufacturer's *conduct* was unreasonable in light of the foreseeable risk of injury." *Philadelphia Indemnity Insurance Company v. BMW of North America LLC*, 2015 WL 5693525 (D. Az.), *quoting Golonka v. General Motors Corp.,* 204 Ariz. 575, 582 (App. 2003).  Therefore, at the outset, plaintiffs' strict liability cause of action fails.  Plaintiffs have not alleged that a manufacturing defect existed. Therefore, the only theories to consider are design defect and failure to warn.

   *a.* *Plaintiffs have failed to establish that a design defect existed*

Plaintiffs' allegations are premised on the fact that Constellation should have done additional neurotoxicity testing in the pre-clinical phase due to the Allis Article being published in August 2015 regarding BET inhibitors.  **[SOF ¶ 51(a)].**  Interestingly, Dr. Sutton testified that he did not have any opinion regarding whether Constellation was negligent for submitting their IND package to the FDA.  **[SOF ¶ 52].**  If Constellation had not done the proper pre-clinical workup, then the submission of the IND would have been defective.  However, plaintiffs' only liability expert has no opinion in that regard.  Furthermore, Dr. Sutton's only reliance for this proposition is based on the Allis Article which involved a different BET inhibitor than the one at issue. **[SOF ¶ 62].** Dr. Sims confirmed that Dr. Sutton's conclusion about the Allis Article is factually incorrect. **[SOF ¶ 63].**

To prevail on a design defect claim, plaintiffs must establish that a product, as designed, is unreasonably dangerous in a way that consumers would not expect. *Hohlenkamp v. Rheem Mfg. Co.,* 134 Ariz. 208, 211 (App. 1982). Arizona has adopted two alternative tests to establish design defect: the consumer expectations test and the risk/benefit test. *Dart v. Wiebe Mfg. Inc*., 147 Ariz. 242, 245 (1985). Consumer expectations applies when the ordinary juror has sufficient experience and understanding of a product design to develop expectations about it; whereas, the risk/benefit test applies when it is a subject matter beyond the average juror's knowledge and experience. *Id*. As a result, the risk/benefit test will apply to this case, which includes the following factors:

> (1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive. *Byrns v. Riddell,* 113 Ariz. 264, 267 (1976).

A plaintiff may recover when the benefits of the challenged design outweigh the risk inherent in the design. *See Moorer v. Clayton Mfg. Corp.*, 128 Ariz. 565, 568, 627 P.2d 716, 179 (App. 1981). "No all-encompassing rule can be stated with respect to the applicability of strict liability in tort to a given set of facts. Each case must be decided on its own merits." *Byrns v. Riddell,* 113 Ariz. at 267. Strict liability only attaches to abnormally dangerous activities. *Perez v. Southern Pac. Transp. Co.*, 180 Ariz. 187, 189, 883 P.2d 424, 425 (App. 1993).

Dr. Sutton was unable to identify any federal regulations or guidelines that required additional neurotoxicity testing in the preclinical phase or revisions to the protocol, or other clinical trial documents. **[SOF ¶ 55].** In addition, Dr. Sutton could not identify specific neurological or psychological issues in the study data. **[SOF ¶ 55].** Given Dr. Sutton's failure to find a defect,

12

Plaintiffs cannot show that Constellation's study drug and protocol were in a defective condition that was unreasonably dangerous to the consumer. *Scheller v. Wilson Certified Foods, Inc.,* 114 Ariz. 159, 162; 559 P.2d 1074 (1977).

      b.      *Plaintiffs' have failed to establish Strict Liability - Failure to Warn*

Plaintiffs allege that adequate warnings and instructions for the study drug were not provided. In order to establish a *prima facie* case of strict products liability based on an warning defect, a plaintiff has "the burden of proving that [the defendant] had a duty to warn of [a specific danger]; that lack of an adequate warning made the [product] defective and unreasonably dangerous; that the [product] lacked adequate warnings when it left [the defendant's] control; and that the failure of [defendant] to give an adequate warning proximately caused plaintiff's injuries. *Gosewisch v. American Honda Motor Co., Inc.,* 153 Ariz. 400, 403; 737 P.2d 376 (1987). Failure to prove any one of these elements is fatal. *Id.*

      c.      *Plaintiffs' cannot prove causation beyond mere speculation*

The only evidence in this case to prove causation is the mere *possibility* that Constellation's product was the source of Ms. Spedale's mania because it was one of the drugs she was taking while the mania happened. Possibility is not sufficient to meet plaintiffs' burden of proof. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 343 (9th Cir. 1978).

Constellation's neuropsychiatric expert, Dr. Maurice Preter, who is dually board certified in neurology and psychiatry, explained that sleep disturbance is a classic prodrome of manic breakdown. **[SOF ¶ 68].** Dr. Preter opined that the year and a half of grossly disturbed sleep patterns preceding her mania, combined with chronic anxiety, and multiple courses of chemotherapy all could have caused or contributed to Ms. Spedale's mania. **[SOF ¶ 69].** Moreover, on the day of Ms. Spedale's enrollment in the clinical trial, she was on a slew of

13

medications, half of which have known mental side effects including mental fog, mood changes, impaired mental performance, headache, dizziness, hallucinations, depression, and confusion. Importantly, one of the listed medications (Prednisone) is known for aggravating pre-existing psychiatric conditions.  **[SOF ¶ 70].**  This is not to say that one or all of these medications caused Ms. Spedale's mania, but the suggestion by plaintiffs that the study drug was the sole proximate cause of her injury is speculative, at best. "Sheer speculation is insufficient to establish the necessary element of proximate cause or to defeat summary judgment." *Badia v. City of Casa Grande*, 988 P.2d 134, 142 (Ariz. App. 1999).  This is not a case of strict liability. This case comes down to whether or not there is negligence.

## V. THE CAUSE OF ACTION FOR NEGLIGENCE MUST BE DISMISSED AS A MATTER OF LAW

In plaintiffs' complaint, it is alleged that Constellation owed a duty to plaintiff to 1) draft a consent form that ensured patient safety and, 2) provide physicians with all necessary information and warnings. Compl. ¶ 60.  Sponsors are responsible for selecting qualified investigators, providing the investigators what they need to conduct an investigation properly, ensure proper monitoring of the investigation, ensure the investigation is conducted in accordance with the general investigational plan and protocols, maintain an effective IND, and ensure the FDA and all participating investigators are promptly informed of significant new adverse effects or risks with respect to the drug.  21 C.F.R. § 312.50; Compl. ¶ 61.  Plaintiffs are unable to establish that Constellation owed any duty to them or that Constellation's alleged breach caused Ms. Spedale's injury.

It was the duty of the Mayo Clinic's IRB to review, amend, and approve the consent form, not Constellation. **[SOF ¶ 20].**  An investigator may not begin the informed consent process with subjects until the IRB reviews and approves the clinical investigation, consent form, and the

information to be given to subjects as part of the consent process. 21 CFR §§ 50.20, 56.103(a), and 56.109. The FDA requires that an IRB review and approve or disapprove all research activities covered by the IRB regulations. 21 C.F.R. § 56.109(a). A critical part of this responsibility is for the IRB to ensure there is an adequate informed consent process that protects the rights and welfare of subjects participating in clinical investigations 21 C.F.R. §56.109(b) and §56.111(a)(4)).

Even if Constellation was responsible for approving the informed consent form, plaintiffs have not relied on any guidelines or regulations to establish that the contents of the informed consent deviated from federal law. The Sponsor's duties under federal regulation are to the investigators of the clinical trial and not directly to the patients/enrollees. 21 C.F.R. § 312.50 Pursuant to 21 C.F.R. § 312.60, an investigator is responsible for "protecting the rights, safety, and welfare of subjects under the investigator's care." *See also* Compl. ¶ 62. Therefore, Dr. Bergsagel and the Mayo's IRB had a direct duty to plaintiffs under federal regulation, not Constellation.

Plaintiffs will attempt to argue that Constellation had a duty to inform the principal investigator of new adverse effects or risks with respect to the drug. This argument would fail in its entirety because it is based on a faulty premise that the Allis Article linked BET inhibitors to brain injury in mammals. **[SOF ¶¶ 62-63].** Notwithstanding the fact that this finding is transparently wrong, the Allis Article did not involve the study drug and was not studying BET inhibitors as a class. **[SOF ¶ 64].** Plaintiff has identified no other article, study, data or finding that BET inhibitor CPI-0610 causes significant risks and adverse effects.

Even if Constellation had a duty to provide additional information in the informed consent, Ms. Spedale did not read the informed consent. [**SOF ¶ 35**; **Compl.** ¶¶ 21, 54]. Therefore, a breach of this duty could not have caused plaintiffs' injuries. Proximate causation does not exist.

To establish a claim for negligence, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages.  Gibson v. Kasey, 214 Ariz. 141, 143 (2007).  The first element, whether a duty exists, is a matter of law for the court to decide. *Markowitz v. Ariz. Parks Bd.,* 146 Ariz. 352, 356 (1985).  Absent some duty, an action for negligence cannot be maintained. *Id*. at 354.  Duty is defined as an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.*

In a cause of action for negligence, plaintiff must show some reasonable connection between defendant's act or omission and plaintiff's damages or injuries. *Purcell v. Zimbelman*, 18 Ariz.App. 75, 82 (1972).  While causation is normally a question of fact for the jury, it can become "an issue of law where, under the undisputed facts, reasonable minds could not differ on the outcome." *Iolab Corp. v. Seaboard Surety Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994).  Under Arizona law, in a negligence action, a plaintiff must prove that the defendant's negligence was the proximate cause of the injury suffered. *MacDonald v. Maricopa Cty.*, 2006 WL 3736052, at *1 (D. Ariz. Nov. 28, 2006); *Hamblin v. Arizona*, 143 P.3d 388, 390 (Ariz. App. 2006).  However, it is plaintiff's burden to show that the defendant's negligent conduct was a "substantial factor in bringing about the harm." *Grafitti Valenzuela ex rel Grafitti v. City of Phoenix*, 167 P.3d 711, 717 (Ariz. 2004); *see also* Restatement (Second) of Torts § 431(a). "Sheer speculation is insufficient to establish the necessary element of proximate cause or to defeat summary judgment." *Badia v. City of Casa Grande*, 988 P.2d 134, 142 (Ariz. App. 1999).

Plaintiffs have failed to meet their burden in this case. There is no evidence that the informed consent or Constellation's handling of the Phase 1 clinical trial was deficient.  Even if

there were, the duty a sponsor has in a clinical trial does not run to plaintiffs. If there is no duty, there can be no breach and it would be impossible for Constellation's conduct to be the proximate cause of plaintiffs' injuries. As a result, plaintiffs' cause of action must be dismissed as a matter of law.

## VI. PLAINTIFFS' CANNOT ESTABLISH PUNITIVE DAMAGES

Under Arizona common law, punitive damages are only "awarded when such an award would serve to punish a defendant that acted with an evil mind." *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 601 (1987). "The requisite . . . evil mind, is established by evidence that defendant either (1) intended to injure the plaintiff . . . or (2) consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Gurule,* 152 P.3d at 87; *Quintero v. Rodgers,* 212 P.3d 874, 879 (Ariz. Ct. App. 2009). The plaintiff's conduct "need not be outrageous in order for the plaintiff to recover, but he must continue his actions despite the inevitable or highly probable harm that would follow." *Quintero*, 212 P.3d at 541. "The clear and convincing proof of the mental state necessary for punitive damages often comes from defendant's expressions, conduct, or objectives, and other "indirect and circumstantial evidence." *Thompson v. Better-Bilt Aluminum Prod. Co.,* 832 P.2d 203, 210 (Ariz. 1992); *McClure v. Country Life Ins. Co.*, 326 F.Supp.3d 934, 946 (D. Ariz. 2018). There is no evidence in this matter that Constellation acted with an "evil mind" or that plaintiffs' can establish the standard for punitive damages.

## VII. CONCLUSION

For the reasons argued above, there are no disputed facts and Constellation is entitled to summary judgment on all causes of action asserted in the complaint.

Dated: November 19, 2018

*/s/ Arthur J. Liederman* (Bar No.1184167)
(*Admitted Pro Hac Vice*)
aliederman@morrisonmahoney.com
*/s/ Nicole M. Battisti* (Bar No. 4961413)
(*Admitted Pro Hac Vice*)
nbattisti@morrisonmahoney.com
**MORRISON MAHONEY LLP**
120 Broadway, Suite 1010
New York, NY 10271
Telephone: (212) 825-1212
Facsimile: (212) 825-1313

*/s/ Jeffrey S. Hunter* (Bar No. 024426)
JHunter@rcdmlaw.com
**RENAUD, COOK, DRURY, MESAROS, PA**
One North Central, Ste. 900
Phoenix, AZ 85004-4117
Tel: (602) 307-9900

*Attorneys for Defendant*
*Constellation Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of November, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Alan Milstein**
**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**
308 Harper Drive, Suite 200
Moorestown, NJ 08057
AMilstein@shermansilverstein.com
*Attorney for Plaintiff*

_____*/s/ Cindy K. Bowlin*_____