Arthur J. Liederman (Bar No. 1184167)
(*Admitted Pro Hac Vice*)
aliederman@morrisonmahoney.com
Nicole M. Battisti (Bar No. 4961413)
(*Admitted Pro Hac Vice*)
nbattisti@morrisonmahoney.com
**MORRISON MAHONEY LLP**
120 Broadway, Suite 1010
New York, NY 10271
Telephone: (212) 825-1212
Facsimile: (212) 825-1313

Jeffrey S. Hunter, Esq. (Bar No. 024426)
JHunter@rcdmlaw.com
**RENAUD, COOK, DRURY, MESAROS, PA**
One North Central, Ste. 900
Phoenix, AZ 85004-4117
Tel: (602) 307-9900

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Iris Spedale and Daniel Spedale, husband and wife,<br><br>         Plaintiffs,<br>v.<br>Constellation Pharmaceuticals, Inc.,<br><br>         Defendant. | DOCKET NO.: CV-17-00109-PHX-JJT<br><br>**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT JAMES P. SUTTON, M.D.**<br><br>**[ORAL ARGUMENT REQUESTED]** |

**COMES NOW, CONSTELLATION PHARMACEUTICALS, INC.** ("Constellation" or "Defendant"), in the above-entitled action, by its attorney, Morrison Mahoney, LLP and Renaud Cook Drury, Mesaros, PA, and submits this Reply to Plaintiffs' Memorandum In Opposition to Defendant's Motion to Exclude Opinions of Plaintiffs' Expert James P. Sutton, M.D.

1178914v.2

**OBJECTION TO PLAINTIFFS' ADMISSION OF DR. JAMES P. SUTTON'S DECLARATION**

In compliance with Local Rule (LRCiv) 7.2(m)(2), Constellation objects to the paragraphs 13, 15, 16-25, 36-38, 41, 43, 49, 50-52, 57, 61-72, 75-91, 95-96 and 99-100 of the Declaration of Dr. James P. Sutton ("Declaration") attached as Exhibit 3 to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Exclude Opinions of Plaintiffs' Expert James P. Sutton, M.D. [Dkt 65], as it is an improper attempt by plaintiffs to supplement his expert report over four months after Plaintiffs were to provide a "full and complete expert disclosure pursuant to Rule 26(a)(2)(A)-(C)," and almost two months after the close of all discovery. (See Rule 16 Scheduling Order, Dkt 52). Plaintiffs have not requested an extension of either fact or expert discovery, or served any supplemental expert disclosure by the rebuttal expert disclosure deadline of September 17, 2018. Notwithstanding, Sutton's assertion that he is submitting it "in order to address Constellation's inaccurate contentions regarding my expert opinions" (¶ 3), his declaration goes way beyond that purpose by substantively offering new opinions not contained in his expert report, and by citing to new publications for the first time.

Sutton's Declaration attempts to belatedly back-door additional opinions and clarify many of his opinions which were lacking factual and scientific support. His Declaration provides an in-depth and detailed analysis of Constellation's preclinical toxicology data, the results of the data, the adverse effects exhibited by the animals, and what Sutton believes to be neurotoxic effects in the data. *See* Declaration ¶¶ 61-72. Sutton's expert report states **nothing** about Constellation's preclinical toxicology data and at his deposition Sutton testified that he reviewed the preclinical toxicology data for the subject clinical trial and when specifically asked whether he saw any "neurological issues in the general toxicology data," he testified, "I would have to refer to the actual documents. My recollection is that nothing was noted and that the details as to what was done were very

1

1178914v.2

sketchy and limited."[1] In similar fashion, Sutton's declaration also goes into depth about various federal regulations and guidelines, namely ICH S7A and ICH S9, to expand on the preclinical testing guidelines and analyzing it in connection with Constellation's preclinical data. *See* Declaration ¶¶ 75-91. In Sutton's expert report, he simply opines that Constellation "failed to adequately test for potential neurotoxicity in violation of basic guidelines for preclinical safety testing," but does not mention any ICH guideline specifically and how Constellation was in violation of such guidelines. Moreover, he conceded at his deposition that he did not "directly reference" the federal guidelines in his report and did not feel it was necessary to itemize the regulation since he included it in the list of things he reviewed.[2]

Sutton further expands on the difference between the BET inhibitor used in the "Allis" article (Jq1) and the study drug (CPI-0610) regarding the blood brain barrier penetration, the properties/similarities shared by these compounds and even provided a chemical structure graph (¶¶ 15-25); discusses the differences in terminology between learning, short-term, and long-term memory and the connection between these processes and neuronal function at the cellular and molecular level (¶¶ 36-38); and elaborates on various experiments conducted by "Allis" (¶¶ 49-52), all of which go beyond addressing or clarifying alleged "inaccurate contentions" regarding his expert opinions and which were not part of the opinions in his expert report or testimony. Sutton cites to and relies upon additional articles that were not originally cited or referred to in his expert report or mentioned as reliance at his deposition, which are also improper. *See* Declaration ¶¶ 13, 43, 57, 95, 96, 99, 100.

Submission of new expert opinions at the summary judgment and *Daubert* stage is a complete violation of this Court's Order and federal rules, and is extremely prejudicial to

---

[1] *See* Constellation's SOF, Exhibit Z, 35:13-21.
[2] *See* Constellation's SOF, Exhibit Y, p. 8 s. 1(b); Exhibit Z, 28:15-30:22; 41:21-42:4.

2

1178914v.2

Constellation by its inability to have their experts rebut the new opinions or depose Sutton on his new theories. A party's failure to abide by the disclosure requirements is governed by Fed. R. Civ. P. Rule 37(c)(1), which provides that "if a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless" or the disobedient party may be prohibited "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." An expert's report must be disclosed under Rule 26(a)(2)(B) and any additions or changes to this information *must* be disclosed by the pretrial disclosure deadline under Rule 26(a)(3). *See*, Fed. R. Civ. P. 26(e)(2). The pretrial disclosure deadline in this case was October 8, 2018. Therefore, plaintiffs' late submission of additional opinions in the Declaration, for the paragraphs identified above, must be disregarded and stricken from the record.

## ARGUMENT

Sutton's opinions and testimony should be excluded because they are not based on any objective scientific research, testing or methodology, and are no more than personal opinion. Constellation does not dispute the fact that Sutton is a board-certified neurologist who has participated as a principal investigator in dozens of clinical trials. However, Sutton renders opinions that go well beyond the scope of his neurological and principal investigator expertise. His opinions concerning the design of a clinical trial for a cancer drug, and the language to be included in an informed consent, are not areas in which Sutton has training, experience, or expertise, and he should not be able to render his personal opinions and gratuitous observations which are unsupported by scientific knowledge and valid principles. Moreover, Sutton relies on no objective methodology in rendering his opinions which would assist the trier of fact.

3

1178914v.2

## I. SUTTON'S OPINIONS ARE OUTSIDE HIS EXPERTISE

Defendant incorporates its submission on its motion regarding Sutton's lack of experience and qualifications warranting the exclusion of his report and opinions. He is a clinical neurologist who has acted as a principal investigator in clinical trials, but this experience does not translate to an expertise on all aspects of clinical trial design, or the drafting of clinical trial studies or protocols or informed consents. He has not been involved in negotiations with the FDA regarding Investigational New Drug Applications (NDA) nor does he work with the standards or regulations associated with the process.  He has not been a participant on an Independent Research Board involved in the approval process or the monitoring of trial studies.  He is not a toxicologist and has no experience in toxicology studies; oncology trials, BET inhibitor studies or trials. Despite plaintiffs' representation in their opposition that Sutton has preclinical trial experience, he testified that he has never participated in "pre-clinical phases or been a consultant in pre-clinical phases for drugs."[3] Acting as a neurology principal investigator in clinical trials does not translate into an expert in the development and design of an oncology clinical trial, design of toxicology studies in the preclinical phase, preparation of an IND submission, including the drafting of the protocol for the FDA's consideration.

While Sutton states that he has "reviewed" clinical trial protocols, he has never been involved in the drafting process.[4]  Preparation of an oncology drug clinical trial process differs from other drugs, yet, Sutton was unaware that the IND submissions for cancer drugs differ from non-cancer drugs.[5]  In fact, he testified that he has never read any BET inhibitor IND submission, has never worked as a principal investigator on a BET inhibitor drug, or any oncology drug, and had no knowledge whether other BET inhibitor studies

---

[3] *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit B**, 22:4-6.
[4] *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit A**, p. 1.
[5] *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit B**, 33:2-11.

4

1178914v.2

have reported manic or psychotic episodes or neurological type illnesses.[6]  Sutton has no specific knowledge about other BET inhibitor clinical trials, and has no personal knowledge about whether these trials conducted additional neurotoxicity testing in the pre-clinical phase, as he was suggesting defendant should have conducted.[7]  Sutton has never reviewed a BET inhibitor IND submission.[8]

Plaintiffs' reliance on *Messick* to argue that "an expert's reliance on his own extensive clinical experience, coupled with his examination of the plaintiffs' records, treatment, and history" permits Sutton's testimony[9] is misplaced. *Messick* involved an expert with direct clinical experience regarding the plaintiff's injury, opining on the causation of that injury. *Messick*, 747 F.3d at 1197. Here, not only are Sutton's opinions not limited to Ms. Spedale's neurological injury and its causation, he has <u>no clinical experience</u> with the neurological effects of BET inhibitors, or experience which would allow him to opine on issues of liability with respect to the sponsor of a clinical trial. Indeed, Sutton has never participated in such a preclinical, or other cancer drug trial.  His opinion is a product of his review of the "Allis" article, which is not clinical research he has relied upon in practice, but is rather something he reviewed for this litigation.

Sutton's opinion that Constellation failed to obtain Ms. Spedale's informed consent, and regarding the content of the informed, consent is outside the scope of what a clinical neurologist can offer as an opinion.  While he has worked with specific informed consents as a principal investigator, that fact does not translate into an expertise for what is required in all informed consents or how they should be composed or structured.  Sutton has no

---

[6] *Id*.; *See also* Constellation's Motion to Exclude, Dkt 55, **Exhibit B**, 36:8-11.

[7] *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit B**, 32:3-9.

[8] *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit B**, 33:2-3.

[9] *See* Plaintiff's Opposition, Dkt 65, pgs. 10-11; see also, *Messick v. Novartis Pharm. Corp.,* 747 F.3d 1193, 1198 (9th Cir. 2014).

5

1178914v.2

regulatory, communications, or human factors experience, and has no knowledge in drafting an informed consent.  He is not an IRB expert on the federal regulations governing the substance of what should be included in an informed consent, how it should be explained, or the format of the consent form. Sutton's opinions are based on personal opinion/preference as a "consumer," or recipient of the consent form, and not on any expertise in drafting the form, or in human factors, which would qualify him to opine on where information should be placed in an informed consent. His opinions are not based on any "scientific, technical, or otherwise specialized knowledge." Fed. Rules Evid. Rule 702. The Ninth Circuit has noted that a "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharms.*, Inc., 43 F.3d 1311, 1317 (9th Cir. 1995).  Based on that standard, and the nonexistent experience Sutton has with BET inhibitors in a clinical trial setting, drafting clinical trial protocols, design and conducting of preclinical testing and IND submissions to the FDA his opinions outside the scope of his knowledge and should be precluded.

**II.    SUTTON'S OPINIONS SHOULD BE EXCLUDED SINCE THEY ARE SPECULATIVE AND NOT BASED ON SUFFICIENT DATA OR A RELIABLE SCIENTIFIC METHODOLOGY**

Notwithstanding the fact that Sutton's opinions are outside the scope of his medical and scientific expertise, his opinions are unreliable and not credible as they are not based on research or work that he has personally participated in or conducted.  Sutton's opinions, relying on the "Allis" article, is only formulated in anticipation of this litigation. Substantively relevant to the plaintiffs' action are the following of Sutton's opinions which must be excluded: (i) whether the informed consent was properly crafted; (ii) whether the defendant was negligent in pre-clinical testing; and (iii) whether there should have been

6

1178914v.2

protocol criteria excluding as clinical trial participants individuals with "prior or active central nervous system neurological or psychiatric illness."10.  As set forth below, none of those opinions are based upon independent research or scientifically valid principles, nor are they founded on more than mere conjecture, and therefore must be excluded.

First, with respect to the informed consent opinion, as noted in the moving papers and in this reply, point I, Sutton is without expertise to opine on the construction and propriety of the informed consent document, or, for example, whether it is deficient for not including exclusion criteria in the document. His opinion provides no expertise to assist the trier of fact and should be excluded.

Second, with respect to whether the defendant adequately conducted pre-clinical testing, the vacuous nature of his "expert" opinion is underscored by his own inconsistency. In his deposition testimony, Sutton admitted that he did not believe that the defendant was negligent in its IND submission to the FDA.  Yet that is where pre-human testing results were submitted and analyzed.  He does not opine on the inadequacies of defendant's tests, and does not describe what additional tests should have been conducted, or what the results would have been that would cause changes in the study.  His opinion is premised on a conclusion derived from the "Allis" article that there might be some risk of adverse neurological effects that **may** be associated with the test drug that were not tested, which is based on a the "Allis" report of long term memory effects on rats with a <u>different</u> BET inhibitor. In addition, Sutton admits that he was not familiar with the test product and he did not conduct research or studies on inhibitors or any oncological drugs and their neurological effects.  Thus, Sutton's opinion provides at best a speculation based on a rat study of a different inhibitor. While his affidavit submitted in opposition refers to the defendant's own test results and various applicable standards, those references are nowhere

---

10 *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit A**, p. 11, Section 7(b).

7

1178914v.2

in his expert report and therefore must be excluded as untimely and prejudicial. At best, Sutton, suggests that there were unknown potential risks but does not opine on the extent of the risk, the character of the effect, the severity, the frequency, the probability (or even possibility). His speculation is not a measured opinion with support and reasoning, the exact type of unsupported testimony that the evidentiary rules seek to avoid.

The third and most significant of Sutton's opinions which should be excluded is that defendant's should have included an criteria excluding proposed participants who had prior neurological or psychological illness, such as Ms. Spedale, who had prior drug induced mania. That conclusion is bereft of any connection to research or facts in this case or any other similar trial.  Absent from Sutton's opinion is any basis to believe that the unknown risk of neurological adverse effects would target a specific population.  The comments in the "Allis" article and other literature cited, which is general and not directed to any specific population. For this reason Sutton is careful not to overreach and suggest that the test product should not have been administered to all at all. He does not contest the FDA approval. Yet he nevertheless suggests without any support that a specific exclusion was mandated. Moreover he suggests that Ms Spedale with her brief history of a resolved incident of steroid induced mania would fall into this exclusion, The fatal flaw in Sutton's opinion, is that he has formulated a hypothesis but never performed any independent research on the CPI-0610 inhibitor or any BET inhibitor to determine whether it could affect patients with prior psychiatric disorder, nor was he able to cite any published data that studied the effects of CPI-0610 on the brain.  In fact, the lead author of the "Allis" Article stated that the BET inhibitor being studied suggested only that it *could* produce "neurological side effects." [11]

---

[11]  *See*   https://neurosciencenews.com/bet-inhibitors-memory-loss-2494/   (last visited January 8, 2019).

8

1178914v.2

The "Allis" article did not conclude that BET inhibitors as a class can affect patients with prior neurological or psychiatric illness, that there is a risk of neurological injury, mania, or psychosis with BET inhibitors, or that those with drug induced mania should particularly be excluded from a trial. In fact, nothing in the "Allis" article, or any other medical or scientific article/peer-reviewed journal, has concluded that CPI-0610 could "negatively affect the brain function or psychological state of an individual."[12] Instead in a quintessential example of reverse engineering an opinion to fit a plaintiff fact scenario, Sutton contends that people with prior neurological and psychological injuries should have been excluded, only citing evidence that suggests an effect on rats (but not selectively rats with prior psychological history). While Sutton cites studies indicating that many chemotherapy drugs are known to breach the blood brain barrier, he does not opine that all of these drugs should exclude individuals with prior psychological or neurological injuries. Sutton does not offer a basis for this selective criteria, such as research, studies, or any other basis upon which he can reasonably conclude that such a history suggests a predisposition to certain adverse effects that speculatively may be associated with the test drug. Nor can Sutton cite to any other clinical trials involving BET inhibitors that employ a similar exclusion criteria – nor any drugs in which similar evidence or concerns creates such an exclusion criteria. The fallacy of argument is underscored by the fact that the purported evidence upon which the plaintiffs rely would be applicable to all potential participants, yet that is not the result advocated. Instead it is a transparent effort to find some basis to have removed Ms. Spedale from the trial. Litigation strategic arguments do not constitute medical and scientific methodology that should or can be considered a basis for admitting expert opinions or as a basis for a negligence cause of action. In sum, Sutton's opinion is speculative and is not scientifically reliable or based on any credible

---

[12] *See* Plaintiffs' Opposition, Dkt 65, p. 7.

9

1178914v.2

methodology that CPI-0610 could cause harm to an individual with prior or active central nervous system neurological or psychiatric illness.

Notably, this district has found expert opinions to be unreliable when the medical and scientific articles relied upon by the expert do not support his conclusion, such as is the case here. *See Cloud v Pfizer Inc.,* 198 F.Supp.2d 1118, 1132 (D. Ariz. 2001). The expert in *Cloud* was not permitted to rely on articles that were only suggestive of a link between the drug and the injury, to conclude that the drug does or did in-fact cause injury. *Id; See also Cabrera v. Cordis Cop.,* 134 F.3d 1418, 1422 (9th Cir. 1998)(excluding expert's opinion after he failed to identify any peer-reviewed research justifying his conclusions). The speculative nature of Sutton's opinion is analogous to the opinion in *Cloud* that was held to be impermissible. The "Allis" article is speculative as to whether CPI-0610 could have any effect on the brain. *See also*, *In re Bard IVC Filters Products Liability Litigation,* 2018 WL 495187 (D. Ariz. 2018)(excluding plaintiffs' expert doctor because it was clear that his opinions were based on his own personal views, rather than on any scientific, technical, or specialized knowledge).

Furthermore, to aid the courts in determining the reliability of an expert, the Supreme Court suggested considering several factors, including: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 592-94.  Here, Sutton's theory that the study drug could cause neurological or psychological illness to an individual has never been tested, it has never been subjected to peer review or publication, there are no known error rates for this theory since it has not been tested, and it is certainly not generally accepted within the scientific community. Notably, Sutton testified, "I didn't offer opinion about [IND] submission, and I don't have

1178914v.2

an opinion now about [IND] submission to be negligent."[13]  Yet plaintiffs' opposition identifies one of his core opinions as being that "Constellation was negligent in prematurely and recklessly advancing CPI-0610 from animal studies to clinical trials."[14]  As a result, this opinion should be excluded in it's entirely.

Finally, part of the *Daubert* inquiry is whether the expert's testimony would assist a trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999); *Daubert v Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589-91 (1993).  The U.S. Supreme Court has reasoned that for an expert opinion to assist a trier of fact, it must be scientific knowledge. *Id*. at 589-590.  "The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id*. at 590.  The Court acknowledged that the testimony does not have to conclude "certainty" since there are no certainties in science, but it must be supported by "appropriate validation".  Sutton's opinions are entirely speculative and there are no good grounds that he has relied upon to support the opinion that CPI-0610 can negatively affect brain function or the psychological state of an individual, and as a result, Constellation should warn of and exclude patients with "prior or active central nervous system neurological or psychiatric illness," from the clinical trial.  Not one article or study cited by Sutton concludes this.  As a result, his opinion would not assist a trier of fact since it is support by no medical or scientific literature or studies.

### III.   CONCLUSION

Sutton's opinions do not satisfy the Daubert standard and for the reasons set forth above, the Court should exclude the testimony of Plaintiff's expert, Dr. James P. Sutton.

---

[13] *See* Constellation's Motion to Exclude, Dkt 55, **Exhibit B**, 33:21-22.

[14] *See* Plaintiffs' Opposition, Dkt 65, p. 4.

11

1178914v.2

Respectfully submitted,

**MORRISON MAHONEY LLP**

*/s/ **Arthur J. Liederman*** (Bar No. 1184167)
(*Admitted Pro Hac Vice*)
aliederman@morrisonmahoney.com
*/s/ **Nicole M. Battisti** (*Bar No. 4961413)
(*Admitted Pro Hac Vice*)
nbattisti@morrisonmahoney.com
**MORRISON MAHONEY LLP**
120 Broadway, Suite 1010
New York, NY 10271
Telephone: (212) 825-1212
Facsimile: (212) 825-1313

Jeffrey S. Hunter, Esq. (Bar No. 024426)
JHunter@rcdmlaw.com
**RENAUD, COOK, DRURY, MESAROS, PA**
One North Central, Ste. 900
Phoenix, AZ 85004-4117
Tel: (602) 307-9900

*Attorney for Defendant
Constellation Pharmaceuticals, Inc.*

12

1178914v.2

# CERTIFICATE OF SERVICE

I hereby certify on this 9th day of January, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Alan Milstein**
**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**
308 Harper Drive, Suite 200
Moorestown, NJ 08057
AMilstein@shermansilverstein.com
*Attorney for Plaintiff*

_____*/s/ Nicole M. Battisti*_____

13

1178914v.2