1  Arthur J. Liederman (Bar No. 1184167)
2  (*Admitted Pro Hac Vice*)
   aliederman@morrisonmahoney.com
3  Nicole M. Battisti (Bar No. 4961413)
   (*Admitted Pro Hac Vice*)
4  nbattisti@morrisonmahoney.com
5  **MORRISON MAHONEY LLP**
   120 Broadway, Suite 1010
6  New York, NY 10271
   Telephone: (212) 825-1212
7  Facsimile: (212) 825-1313

8
   Jeffrey S. Hunter, Esq. (Bar No. 024426)
9  JHunter@rcdmlaw.com
10 **RENAUD, COOK, DRURY, MESAROS, PA**
   One North Central, Ste. 900
11 Phoenix, AZ 85004-4117
   Tel: (602) 307-9900
12

13              **IN THE UNITED STATES DISTRICT COURT**
                  **FOR THE DISTRICT OF ARIZONA**
14

15 | Iris Spedale and Daniel Spedale, husband and wife, | DOCKET NO.: CV-17-00109-PHX-JJT |

16

17                          Plaintiffs,          **DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
         v.
18
    Constellation Pharmaceuticals Inc,
19                                               **[ORAL ARGUMENT REQUESTED]**
                          Defendant.
20

21

22      **COMES   NOW,   CONSTELLATION   PHARMACEUTICALS,   INC.**

23 ("Constellation" or "Defendant"), in the above-entitled action, by its attorney, Morrison

24 Mahoney, LLP and Renaud Cook Drury, Mesaros, PA, and submits this Reply to Plaintiffs'

25 Memorandum In Opposition to Defendant's Motion for Summary Judgment.

26

27

28
   1178615v.5

**OBJECTION TO PLAINTIFFS' ADMISSION OF DR. JAMES P. SUTTON'S DECLARATION**

In compliance with Local Rule (LRCiv) 7.2(m)(2), Constellation objects to the paragraphs 13, 15, 16-25, 36-38, 41, 43, 49, 50-52, 57, 61-72, 75-91, 95-96 and 99-100 of the Declaration of Dr. James P. Sutton ("Declaration") attached as Exhibit 16 to Plaintiffs' Statement of Additional Facts [Dkt 64] in Support of Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment [Dkt 63], as it is an improper attempt by plaintiffs to supplement his expert report over four months after plaintiffs were to provide a "full and complete expert disclosure pursuant to Rule 26(a)(2)(A)-(C)," and almost two months after the close of all discovery. (See Rule 16 Scheduling Order, Dkt 52). Plaintiffs have not requested an extension of either fact or expert discovery, or served any supplemental expert disclosure by the rebuttal expert disclosure deadline of September 17, 2018.  Notwithstanding, Sutton's assertion that he is submitting it "in order to address Constellation's inaccurate contentions regarding my expert opinions" (¶ 3), his declaration goes way beyond that purpose by substantively offering new opinions not contained in his expert report, and by citing to new publications for the first time.

Sutton's Declaration attempts to belatedly back-door additional opinions and clarify many of his opinions which were lacking factual and scientific support.  His Declaration provides an in-depth and detailed analysis of Constellation's preclinical toxicology data, the results of the data, the adverse effects exhibited by the animals, and what Sutton believes to be neurotoxic effects in the data. *See* Declaration ¶¶ 61-72. Sutton's expert report states **nothing** about Constellation's preclinical toxicology data and he testified that he reviewed the preclinical toxicology data and when asked whether he saw any "neurological issues in the general toxicology data," he testified, "I would have to refer to the actual documents. My recollection is that nothing was noted and that the details as to what was done were very sketchy and limited."[1]  In similar fashion, Sutton's declaration

---

[1] *See* Constellation's SOF, Exhibit Z, 35:13-21.

1178615v.5

also goes into depth about various federal regulations and guidelines, namely ICH S7A and ICH S9, to expand on the preclinical testing guidelines and analyzing it in connection with Constellation's preclinical data. *See* Declaration ¶¶ 75-91. In Sutton's expert report, he did not analyze any ICH guidelines and he conceded that he did not "directly reference" the federal guidelines in his report.[2]

Sutton further expands on the difference between the BET inhibitor used in the "Allis" article (Jq1) and the study drug (CPI-0610) (¶¶ 15-25); discusses the differences in terminology between learning, short-term, and long-term memory (¶¶ 36-38); elaborates on various experiments conducted by "Allis" (¶¶ 49-52); and cites to/relies upon additional articles not referred to in his report (¶¶ 13, 43, 57, 95, 96, 99, 100), all of which go beyond addressing or clarifying alleged "inaccurate contentions" regarding his expert opinions.

Submission of new expert opinions at the summary judgment and *Daubert* stage is a complete violation of this Court's Order and federal rules, and is extremely prejudicial to Constellation by its inability to have their experts rebut new opinions or depose Sutton on his new theories. A party's failure to abide by the disclosure requirements is governed by Fed. R. Civ. P. Rule 37(c)(1).[3] An expert's report must be disclosed under Rule 26(a)(2)(B) and any additions or changes to this information _must_ be disclosed by the pretrial disclosure deadline under Rule 26(a)(3). *See*, Fed. R. Civ. P. 26(e)(2).  The pretrial disclosure deadline was October 8, 2018.  Therefore, plaintiffs' late submission of additional opinions, for the paragraphs identified above, must be disregarded and stricken from the record.

---

[2] *See* Constellation's SOF, Exhibit Y, p. 8 s. 1(b); Exhibit Z, 28:15-30:22; 41:21-42:4.

[3] "if a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless" or the disobedient party may be prohibited "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. Rule 37(c)(1).

1178615v.5

**I.    AS A MATTER OF LAW THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR LACK OF INFORMED CONSENT**

Four overriding reasons support defendant's right to summary judgment dismissing plaintiffs' claim for lack of informed consent – (1) Plaintiffs own testimony, ignored in plaintiffs' opposition, is that they never read the informed consent, nor was it explained or read to them, prior to signing it[4]; (2) The clinical trial site – the Mayo Clinic ("Mayo") – had responsibility for the final draft of the informed consent, as well as for physically obtaining the informed consent from the participant; (3) There is no evidence that defendant failed to convey necessary information to the physicians or Mayo regarding the experimental nature of the study drug or that it was not unknown to the Clinical Trial site physicians and employees; and (4) Plaintiffs' allegations regarding oral representations or misrepresentations by Mayo's staff and physicians (including treating physicians) regarding the trial, prior to executing the informed consent document (and without reading the document), was not under the control of defendant, as the sponsor. Central to deciding this Motion is defendant's Motion to Exclude Dr. Sutton's Opinions (Dkt 55).

Ms. Spedale met with her treating physicians prior to enrollment in the clinical trial, was informed about the trial, agreed with her oncologist to participate in the trial, and executed the clinical trial's informed consent without reading it, testifying that she relied on her oncologist's expertise.[5]  As a matter of law, this Court can dismiss plaintiffs' claim for lack of informed consent since there is no question of fact that any dispute over what should have been in the document had no causal relationship to her participation in the trial. Plaintiffs cannot rebut their own testimony as part of their prima facie action. No proffer has been made to explain and reconcile plaintiffs' unambiguous testimony that they did not read it nor was it read to them.  To the extent there was a deficiency in the informed

---

[4] *See* Constellation's Statement of Facts ("SOF") ¶ 35.
[5] *See* Constellation's SOF ¶¶ 1, 35, 43, 44.

1178615v.5

1
2
consent process at the Mayo Clinic, Constellation cannot be liable for such acts or omissions as they are not an agent of the Mayo Clinic.[6]

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
Even assuming that the substance of the informed consent is a viable claim, plaintiffs erroneously contend that the informed consent was deficient for two reasons: (1) the use of the word "treatment," (allegedly masking the experimental character); and (2) that the informed consent failed to identify the protocol's inclusion and exclusion criteria. Fatal to those arguments is that plaintiffs have offered no competent evidence nor admissible expert witness testimony (Sutton's report and testimony is the subject of a motion to exclude) to establish what should be included in an informed consent for a clinical trial, what was the reasonable practice for clinical trial sites and what would conform with FDA rules and regulations. There has been no proffer of an expert with Investigational Review Board ("IRB") or human factors experience, or experience involved in the drafting/revising of informed consents. Plaintiffs' sole expert is a physician, with no experience drafting or formulating protocols/informed consents who has gratuitously suggested what would be helpful to him – anecdotal evidence.  The depositions of the Mayo Clinic belie any evidence that the IRB, employees or physicians associated with this clinical trial were confused or unaware of its experimental nature, or the cautions regarding participants with available alternative approved treatments.

20
21
22
23
24
25
26
As to whether the inclusion and exclusion criteria should be in the informed consent rather than the protocol, Sutton's opinion is unsupported by any expertise or showing that the failure to place it in the consent form deviated from either practice or regulations.  The criteria, however, is located in the protocol because it is used by the principal investigator to determine whether an individual should be enrolled. The informed consent is intended to be read by patients **after** a patient has been approved (by the principal investigator and treating physician) as a qualified candidate.  It is not part of the information to be relied

27
28
---
[6] *See* Constellation's SOF ¶ 17, 46.

4

1178615v.5

upon by the participant.  Moreover, given Ms. Spedale's admitted failure to have read the informed consent, plaintiffs' contention that if the informed consent had used the term experimental rather than suggest "treatment," she would have never enrolled, is irrelevant.[7] Even if read, the fact was clearly stated - that the study was "experimental," not yet approved by the FDA to treat cancer.[8]  Semantics cannot create a question of fact in this instance – the word treatment in the document is not misleading.  A clinical trial is concededly an experimental treatment with an experimental drug.  Whether plaintiffs viewed the trial as "treatment" is, at best, based on representations by her own treating physician in recommending the trial.

Plaintiffs misleadingly contend in their opposition that defendant's Chief Medical Officer wrote the informed consent.[9]  Rather, Dr. Cooper testified that they provide a template to the clinical study site and the site has the responsibility to modify it according to their local practices.[10]  This testimony is consistent with defendant's IRB expert who confirmed that the Mayo had their own IRB to review, amend, and approve the informed consent and ensure it is sought from each patient.[11]  The principal investigator testified that he reviewed the informed consent and submitted it to the Mayo's IRB for review and approval.[12] Moreover, the Clinical Trial Agreement stated that the Mayo was responsible for obtaining a written Informed Consent.[13]

Plaintiffs' reliance on the decision in *Zemen v. Williams*, Docket No. 11-10204-GAO, 2014 WL 3058298 (D. Mass. July 7, 2014), is not dispositive of the issues raised in

---

[7] *See* Plaintiffs' Opposition, Dkt 63, p. 18.

[8] *See* Constellation's SOF ¶ 48.

[9] *See* Plaintiffs' Statement of Additional Facts ("SOAF"), Dkt 64, ¶ 27; Plaintiffs' Opposition, Dkt 63, pgs. 2, 15.

[10] *See* Plaintiffs' Exhibit 3 at 59:2-14.

[11] *See* Constellation's SOF ¶¶ 15-22.

[12] *See* Constellation's SOF ¶ 25.

[13] *See* Constellation's SOF ¶ 16; 21 C.F.R. § 312.60.

5

1178615v.5

this motion addressing the merits of plaintiffs' claim for failure to procure an informed consent.  The court in *Zeman* did not dispute the fact that a clinical trial site is responsible for physically obtaining the participant's informed consent. *Id*. at \*2.  In the case at bar, there is no evidence that the IRB or principal investigator did not know the drug was experimental or was unaware of the inclusion and exclusion criteria that they could have chosen to communicate to plaintiffs.

The clinical trial site created the final document and was responsible for the manner in which Ms Spedale was informed about the trial; the informed consent complied with all applicable regulations, communicating the research nature of the study, that it was "experimental," outlined the rights of the patient as a volunteer participant, listed all known risks, and the primary purpose of the study.[14] Federal regulations do not require inclusion/exclusion criteria to be identified in the informed consent, nor do plaintiffs or their expert identify a provision that would require it. *See* 21 C.F.R. § 46.116 (a), (b). Any argument is mooted by the plaintiffs' failure to read the informed consent,  which is a fatal absence of causation. *See e.g. Motus v. Pfizer, Inc.*, 358 F.3d 659 (9th Cir. 2004) (where a prescribing doctor did not read a warning label, the adequacy of the warning is irrelevant); *see also Gosewisch v. American Honda Motor Co.*, 737 P.2d 376 (Ariz. 1987). There is no evidence that *if* additional information was communicated to Ms. Spedale, it would have changed her decision to participate. *See Rice v. Brakel,* 310 P.3d 16 (Ariz. Ct. App. 2013).

**II.    SUMMARY    JUDGMENT    IS    WARRANTED    DISMISSING PLAINTIFF'S CLAIM FOR NEGLIGENCE**

Plaintiffs' claim of negligence based on defendant's failure to secure an informed consent is fatally flawed for the same reasons discussed above in Point I. [15]

---

14 *See* Constellation's SOF, Exhibit L, p. 6, ¶ 7; *See also* 21 C.F.R. § 46.116.

15 *See also* Plaintiffs' Opposition, Dkt 63, p. 15-16; *See also* Plaintiffs' Compl. ¶¶ 59-65.

6

1178615v.5

1

2

3

An alternative basis for negligence asserted by the plaintiffs is based on whether

4

defendant failed to inform the principal investigator of all known adverse effects or risks

prior to the human clinical trials; and whether the trial should have excluded individuals

5

with prior neurological and psychological illnesses. Plaintiffs' claim is predicated on the

6

allegation that the Allis Article, in stating that "small molecule BET inhibitors are in

7

clinical trials, yet almost nothing is known about Brd4 function in the brain,"[16] establishes

8

that "research that was known or should have been known to Constellation … that the

9

bromodomain inhibitor CPI-0610 could very well negatively affect the brain function or

10

psychological state of an individual…"[17]  That  claim is fatally flawed since it is built upon

11

a contradictory internal argument.  Plaintiffs suggest that the medical/scientific community

12

does not know about the effects of BET inhibitors on the brain, yet proposes that defendant

13

should have "known" about such effect and modified their clinical testing and protocol to

14

create warnings and exclusions for patients with a history of "drug-induced neurotoxicity

15

or mania."[18]   However, the "Allis" article, which was published years after defendant

16

conducted the preclinical testing, and two years after the Phase 1 clinical trial began, did

17

not involve the study drug nor did it study BET inhibitors as a class.[19]  In fact, the lead

18

author of the "Allis" article stated that even though the compound (Jq1) they tested crossed

19

into the brain, this "may not be the case for other drug variants tested in patients" and if

20

companies using unique formulations of inhibitors add "chemical groups to make a

21

compound more targeted or effective … [it] might make it more difficult for the drug to

cross the blood-brain barrier." [20]

22

23

24

[16] See Plaintiffs' SOAF, Dkt 64, ¶ 50.

25

[17] *See* Plaintiffs' SOAF, Dkt 64, ¶ 98.

26

[18] *See* Plaintiffs' Opposition, Dkt 63, p. 8.

[19] *See* Constellation's SOF ¶ 64.

27

[20] *See* Plaintiffs' SOAF ¶ 51.

28

7

1178615v.5

The "Allis" article **did not conclude** that the Jq1 inhibitor could or would cause brain injury, mania or psychosis, nor can plaintiffs or their expert conclude otherwise. [21]   The conclusions of the "Allis" article did not require defendant to reconstruct their testing and warnings since the results of the Allis study did not offer evidence about the effects of CPI-0610 on the brain.  Plaintiffs' expert on one hand uses the "Allis" article and other cited literature to highlight a *possible* general risks with BET inhibitors, but then suggests, without foundation, that defendant should have excluded individuals with a history of neurological or psychiatric illness. Plaintiffs, without reasoning or scientific support, advance a different criteria, narrowly tailoring this risk to Ms. Spedale and her participation in the study - that defendant should have excluded patients with "drug-induced neurotoxicity or mania."[22] Yet, there is no recommendation or finding in the "Allis" article, or any medical/scientific literature or data, suggesting that there is a necessity for individuals with "drug-induced neurotoxicity or mania" to avoid these inhibitors. Notably, defendant conducted six independent general toxicology studies on the brain and central nervous system, which did not reveal any findings of neurological or psychological issues.[23]

Despite the fact that plaintiffs' expert is not a toxicologist, he was unable to identify in his report or deposition testimony any values in the preclinical data that evidenced neurological or psychological concern warranting further testing.[24] Even during defendants' Phase 1 testing of the study drug, which lasted several years and given to 138 individuals, Ms. Spedale was the only person to experience mania.[25] Dozens of other BET inhibitor clinical trials have been conducted, and none have resulted in study participants experiencing mania or psychosis. Plaintiffs' expert was not familiar with any of the other

---

[21] *See* Constellation's SOF ¶ 63.
[22] See Plaintiffs' Opposition, Dkt 63, p. 8.
[23] *See* Constellation's SOF ¶¶ 9, 11.
[24] *See* Constellation's SOF ¶ 56.
[25] *See* Constellation's SOF ¶ 40.

8

BET inhibitor clinical trials and could not identify a trial in which the sponsor conducted additional neurotoxicity testing, excluded patients with drug-induced neurotoxicity or mania, or warned about neurotoxicity or mania in the protocol or informed consent.[26]

Plaintiffs' reliance on the Allis Article cannot and should not be the sole basis to establish defendant's liability.  Nor is Sutton capable to draw conclusions from the Allis article and suggest what Constellation should have done in further testing or how it would relate to any warning or exclusion criteria. At best, plaintiffs, through Sutton, suggest that there were unknown potential risks associated with the drug, specifically neurological or psychological adverse effects.  Yet, the extent of the risk, the character of the effect, the severity, the frequency, the probability (or even possibility) was unknown.  Interestingly, Sutton does not advocate that the drug nor any inhibitor should not have been approved for human trials.[27] Instead in a quintessential example of reverse engineering an opinion to fit a plaintiff fact scenario, Sutton contends that people with neurological or psychological illnesses should have been excluded.

Problematic and fatal to the claim, Sutton only cites evidence that suggests an effect on rats, not selectively on rats with prior neurological or psychiatric history. The fact that the drug may breach the blood brain barrier does not suggest a specific criteria for exclusion. Sutton's reference to studies that many chemotherapy drugs may breach the blood brain barrier equally does not suggest a meaningful exclusion criteria. The only evidence cited is to a general **unknown** risk.  Plaintiffs offer no basis for this selective criteria, no research, no studies, no basis upon which a fact finder can reasonably conclude based on scientific methodology that individuals with prior history would suggest a predisposition to adverse effects of the drug.  Nor can Sutton cite to any other clinical trials involving BET inhibitors that employ a similar criteria – nor any drugs in which similar

---

[26] *See* Constellation's SOF ¶ 57.

[27] *See* Constellation's SOF ¶ 52.

9

1
2
3
4
5
6
7
8

evidence or concerns has required such criteria.  The fallacy of the argument is underscored by the purported evidence upon which the plaintiffs rely, evidence applicable to all potential participants in the study - yet that is not the result advocated. Instead it is a transparent effort to find some basis to have removed Ms. Spedale from the trial. Litigation strategic arguments do not constitute medical and scientific methodology that can be considered a basis for admitting expert opinions or a basis for a cause of action for negligence.

9
10
11
12
13
14
15

Plaintiffs additionally contend that defendant had a duty to provide an exclusion criteria that patients with other standard effective treatment options should not be enrolled and should be excluded.  However, this language is included three separate times within the Clinical Trial Protocol.[28] The treating physician and investigator knew this was experimental and that the study was not targeted to individuals with other available treatments. There is no expert showing or factual basis to suggest that adding this to the criteria would have been material to Ms. Spedale's participation in the study.

16

### III.   SUMMARY JUDGMENT IS WARRANTED DISMISSING THE CLAIM FOR STRICT PRODUCTS LIABILITY

17
18
19
20
21
22

This is not a case of strict products liability. Plaintiffs, in opposition, cite *Gaston v. Hunter*, 588 P.2d 326, 338 (Ariz. App. 1978). However, in *Gaston* the court ultimately held that a manufacturer of an experimental drug may be entitled to an exemption from strict liability in tort, under comment k. *Id.* at 339-42.[29] The study drug in the case at bar was properly distributed since Constellation received FDA approval to conduct the Phase 1

23
24
25
26
27

[28] "Patients with multiple myeloma that has progressed following standard treatment, and for whom further effective standard treatment is <u>not</u> available, will be enrolled in this study." …. "This study will be conducted in adult patients with multiple myeloma that has progressed following standard treatment, and for whom further effective standard treatment is <u>not</u> available." … "The patients enrolled in this study will be adults … with a … confirmed diagnosis of multiple myeloma that has progressed following standard treatment, and for whom further effective standard treatment is not available." [Emphasis Added] *See* Constellation's SOF Exhibit AA, pgs. 4, 29, 33.

[29] *See also* Constellation's Motion for Summary Judgment, Dkt 56, Section IV, pgs 9-10.

28

10

1178615v.5

clinical trial.[30]  The informed consent for the clinical trial advised that the study drug was "experimental" and warned of all risks known.[31] Even if this Court believes that strict liability is applicable, plaintiffs have not demonstrated any issue of fact that the study drug was unreasonably dangerous. *See Southwest Pet Products, Inc. v. Koch Industries, Inc.,* 273 F.Supp.2d 1041, 1053 (D. Ariz. 2003); *Perez v. Southern Pac. Transp. Co.*, 180 Ariz. 187, 189, 883 P.2d 424, 425 (App. 1993).  The FDA approved the study drug for human clinical testing, a clinical hold was never issued during the Phase 1 testing, and no other study participant experienced the same manic-like condition as Ms. Spedale.  Plaintiffs' entire case has been centered on the *conduct* of Constellation, not the formulation or design of the BET inhibitor itself. "The central focus of inquiry in strict liability design cases is whether the *product* was unreasonably dangerous, while the focus in negligent design cases is whether the manufacturer's *conduct* was unreasonable in light of the foreseeable risk of injury." *Philadelphia Indemnity Ins. Co.  v. BMW of North America LLC*, 2015 WL 5693525 (D. Az.), *quoting Golonka v. General Motors Corp.,* 204 Ariz. 575, 582 (App. 2003).

## IV.    CONCLUSION

Plaintiffs' opposition briefly contends that Constellation's Motion [Dkt 56] violates Local Rule 7.1(b)(1) and the Motion exceeded the 17-page limit, which is prejudicial to plaintiffs. Constellation has submitted as Exhibit A to this Reply a "corrected" replica version of the Motion in compliance with LR 7.1(b)(1), for the Court's review, which does not exceed the 17-page limit. There is no prejudice to plaintiffs.  For the reasons argued above, there are no disputed facts and Constellation is entitled to summary judgment on all causes of action asserted in the complaint.

---

[30] *See* Constellation's SOF ¶ 13.

[31] *See* Constellation's SOF ¶ 48; Exhibit A.

11

1

2
Respectfully submitted,

3

4
**MORRISON MAHONEY LLP**

5

6
*/s/ Arthur J. Liederman* (Bar No. 1184167)
(*Admitted Pro Hac Vice*)
aliederman@morrisonmahoney.com

7
*/s/ Nicole M. Battisti (*Bar No. 4961413)
(*Admitted Pro Hac Vice*)

8
nbattisti@morrisonmahoney.com

9
**MORRISON MAHONEY LLP**
120 Broadway, Suite 1010

10
New York, NY 10271
Telephone: (212) 825-1212

11
Facsimile: (212) 825-1313

12

13
Jeffrey S. Hunter, Esq. (Bar No. 024426)
JHunter@rcdmlaw.com

14
**RENAUD, COOK, DRURY, MESAROS,**
**PA**

15
One North Central, Ste. 900

16
Phoenix, AZ 85004-4117
Tel: (602) 307-9900

17

18
*Attorney for Defendant*
*Constellation Pharmaceuticals, Inc.*

19

20

21

22

23

24

25

26

27

28

12

1178615v.5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify on this 9th day of January, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Alan Milstein**
**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**
308 Harper Drive, Suite 200
Moorestown, NJ 08057
AMilstein@shermansilverstein.com
*Attorney for Plaintiff*

_____*/s/ Nicole M. Battisti*_____

13

1178615v.5