1    Alan C. Milstein
     SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
2    A Professional Corporation
3    308 Harper Drive, Suite 200
     Moorestown, NJ 08057
4    Telephone: 856-662-0700
     Facsimile: 856-488-4744
5    E-Mail: amilstein@shermansilverstein.com

6
     *Attorneys for Plaintiffs Iris Spedale and Daniel Spedale, husband and wife*
7
                    **IN THE UNITED STATES DISTRICT COURT**
8                      **FOR THE DISTRICT OF ARIZONA**

9
     Iris Spedale and Daniel Spedale, husband          Docket No. CV-17-00109-PHX-JJT
10   and wife,

11          Plaintiffs,                              **PLAINTIFFS' RESPONSE TO THE**
                                                     **DEFENDANT'S OBJECTION TO**
12          v.                                       **PORTIONS OF JAMES P.**
                                                     **SUTTON, M.D.'S DECLARATION**
13
     Constellation Pharmaceuticals, Inc.,
14
            Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**RESPONSE**</u>

2     Plaintiffs Iris Spedale and Daniel Spedale (collectively "Plaintiffs"), by and

3 through the undersigned counsel, respectfully submit this response to Defendant

4 Constellation Pharmaceuticals, Inc.'s ("Constellation") objection to portions of James

5 P. Sutton, M.D.'s declaration.

6     On November 19, 2018, Constellation filed a "Motion to Exclude Opinions of

7 Plaintiffs' Expert Dr. Sutton" ("Motion to Exclude") [Doc. No. 55], and a "Motion for

8 Summary Judgment" [Doc. No. 56].  Constellation argued that Dr. Sutton has "failed to

9 identify any findings in the pre-clinical toxicology data demonstrating that Constellation

10 failed to perform the required and appropriate pre-clinical testing, specifically

11 neurotoxicity testing."  Constellation further argued that Dr. Sutton's reliance on the

12 article co-authored by its co-founder C. David Allis, Ph.D. ("Allis Article") was

13 misplaced, contending that "Dr. Sutton relies exclusively on one published article

14 (coauthored by one of Constellation's former founders) in which he suggests establishes

15 that BET inhibitors, the class of drugs in which the study drug is part of, causes brain

16 injury in mammals."  [E.g., Doc. No. 56, page 3.]  Constellation contended that Dr.

17 Sutton's opinions and testimony should be excluded.

18     Constellation attached to both its Motion to Exclude, and its Motion for Summary

19 Judgment, an Affidavit from Robert Sims, Ph.D. ("Sims Affidavit"), who is an employee

20 of Constellation.  [Document Nos. 55-3, 59-8.]  Constellation argued in its briefing that

21 the Sims Affidavit "confirm[s] that Sutton's conclusions are factually inaccurate and a

22 gross misinterpretation of the findings" in the Allis Article.   [E.g., Doc. No. 56, page

23 3.]   The Sims Affidavit offers expert opinions on the part of Dr. Sims that were

24 indisputably not disclosed to the Plaintiffs during the period for expert disclosures.

25 Indeed, within the Sims Affidavit, Dr. Sims purports to, for the first time, "clarify the

26 findings of the Article and to correct any misinterpretations that Dr. Sutton has of the

27 Article and any factually inaccurate statements made about the findings in the Article."

28 [E.g., Doc. No. 55-3, ¶ 7.]  The Sims Affidavit is dated November 19, 2018, the filing

date of Constellation's Motion to Exclude, and Motion for Summary Judgment.  [E.g., Doc. No. 59-8.]

The Plaintiffs had every right to vigorously respond.  To this end, they obtained a detailed declaration from their own expert Dr. Sutton ("Sutton Declaration"), and they attached the Sutton Declaration to their opposition to Constellation's Motion to Exclude, and their opposition to Constellation's Motion for Summary Judgment.  [E.g., Doc. No. 64-7.].

In its reply papers in further support of its Motion to Exclude, and its Motion for Summary Judgment, Constellation baselessly objects to portions of Dr. Sutton's declaration (namely ¶¶ 13, 15, 16-25, 36-38, 41, 43, 49, 50-52, 57, 61-72, 75-91, 95-96, and 99-100), on the grounds that said portions constitute an impermissible enlargement of prior expert disclosures.  In reality, as Dr. Sutton states, he submitted his declaration "in order to address Constellation's inaccurate contentions regarding [his] expert opinions in this matter, and [his] reference to" the Allis Article.  [Doc. No. 64-7, ¶ 3.]

- Paragraphs 5-6 of the Sutton Declaration, which are unchallenged by Constellation, directly respond to the assertions within ¶ 5 of the Sims Affidavit.

- Paragraphs 7-8 of the Sutton Declaration, which are unchallenged by Constellation, directly respond to the assertions within ¶ 6 of the Sims Affidavit.

- Paragraphs 9-13 of the Sutton Declaration, most of which are unchallenged by Constellation, directly respond to the assertions within ¶ 8 of the Sims Affidavit that the purpose of the Allis Article and the testing "was to evaluate potential effects of a chromatin regulator, BRD4, on gene expression and any downstream biological responses in a neuronal setting in neuronal cells and animal behavior experiments."

- Paragraphs 14-25 of the Sutton Declaration directly respond to the assertions within ¶ 10 of the Sims Affidavit that, based upon Dr. Sims' experience, "it cannot be assumed that two chemically distinct BET bromodomain inhibitors have the same pharmacokinetic properties, blood brain barrier penetration, and

pharmacologic effects without direct and comparative experimental determination."

- Paragraphs 26-32 of the Sutton Declaration, which are unchallenged by Constellation, directly respond to the assertions within ¶ 11 of the Sims Affidavit.

- Paragraphs 33-38 of the Sutton Declaration, some of which are unchallenged by Constellation, directly respond to the assertions within the first portion of ¶ 12 of the Sims Affidavit that "[t]here were no major changes in short-term memory, movement, learning ability or anxiety."  Contrary to Constellation's argument, Dr. Sutton had every right to respond to what Dr. Sims asserted.

- Paragraphs 39-52, many of which are unchallenged by Constellation, directly respond to the assertions within the second portion of ¶ 12 of the Sims Affidavit that "the neurological and psychological characteristics of the mice were considered to be normal and unaffected by the BET inhibitor."  Contrary to Constellation's argument, Dr. Sutton had every right to respond to what Dr. Sims asserted.

- Paragraphs 53-57, most of which are unchallenged by Constellation, directly respond to the assertions within ¶ 13 of the Sims Affidavit that "[t]here were no findings that the mice suffered brain cell death or change in the brain's neuronal structure."  Contrary to Constellation's argument, Dr. Sutton had every right to respond to what Dr. Sims asserted.

- Paragraphs 58-59, both of which are unchallenged by Constellation, directly respond to the assertions within ¶ 15 of the Sims Affidavit.

- Paragraphs 60-72 directly respond to the assertions within ¶ 16 of the Sims Affidavit that "the brain and central nervous system was tested during 6 independent general toxicology studies and no findings of neurological or psychological issues were found."  Contrary to Constellation's argument, Dr. Sutton had every right to respond to what Dr. Sims asserted.

- Paragraphs 73-91 directly respond to the assertions within ¶ 17 of the Sims Affidavit that Dr. Sims is "aware of no FDA regulation or guideline that requires specific neurotoxicity testing for BET inhibitors due to concern of the inhibitor causing neurological and/or psychological issues." Contrary to Constellation's argument, Dr. Sutton had every right to respond to what Dr. Sims asserted.

- Paragraphs 92-100 directly respond to the assertions within the first portion of ¶ 18 of the Sims Affidavit that Dr. Allis "never mentioned the findings of the research with respect to the work we were undertaking at Constellation, nor would I expect him to do so." Contrary to Constellation's argument, Dr. Sutton had every right to respond to what Dr. Sims asserted.

- Finally, ¶¶ 101-102, which are unchallenged by Constellation, directly respond to the assertions within the second portion of ¶ 18 of the Sims Affidavit.

Thus, the Sutton Declaration responds to the opinions within the Sims Affidavit, first disclosed on November 19, 2018, on a paragraph-by-paragraph basis. Surely Constellation cannot contend that Dr. Sims should be allowed to give new expert opinions in support of summary judgment and a Daubert motion, and those opinions cannot be challenged by way of a responsive declaration. Moreover, the Sutton Declaration is completely consistent with Dr. Sutton's prior expert disclosures, and at most, in certain instances, in direct response to Dr. Sims' assertions, provides further support for Dr. Sutton's prior contentions. If any party has submitted "new expert opinions at the summary judgment and Daubert stage," it is Constellation. And even if the challenged opinions within the Sutton Declaration are new, which they are not, the disclosure of those opinions at the summary judgment/Daubert stage is "substantially justified or harmless"[1] in light of the Sims Affidavit.

## CONCLUSION

For the foregoing reasons, the objection should be overruled.

---

[1] See Federal Rule of Civil Procedure 37(c)(1).

-4-

1

Dated: <u>Wednesday, January 16, 2018</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By:   <u>/s/ Alan C. Milstein</u>
      Alan C. Milstein
      308 Harper Drive, Suite 200
      Moorestown, NJ 08057
      Telephone: 856-662-0700
      Facsimile: 856-488-4744
      E-Mail: amilstein@shermansilverstein.com

*Attorneys for the Plaintiffs*